## W. P. Jeffries v. J. N. Loving.

1. REAL ESTATE BROKERS—*When Entitled to Commissions.*—A real estate broker is entitled to his commissions when he procures a purchaser ready, willing and able to buy the land.

2. INSTRUCTIONS—*Stating Abstract Propositions of Law.*—Instructions stating mere abstract propositions of law are properly refused.

Assumpsit, with attachment in aid. Appeal from the Circuit Court of Macon County; the Hon. EDWARD P. VAIL, Judge presiding. Heard in this court at the May term, 1902. Affirmed. Opinion filed November 1, 1902.

MILLS & FITZGERALD, attorneys for appellant.

I. A. BUCKINGHAM, attorney for appellee.

MR. JUSTICE BURROUGHS delivered the opinion of the court.

This was an action of assumpsit (with attachment writ issued in aid and levied upon real estate of the appellant), which was brought in the Circuit Court of Macon County by the appellee, John M. Loving, against the appellant, W. P. Jeffries, to recover $360 which Jeffries had agreed to pay Loving as commissioner for procuring a purchaser to whom Jeffries sold his farm situated in said county.

The declaration consisted of the consolidated common counts, to which the appellant pleaded non-assumpsit, and issue being joined, a trial was had by jury, and verdict returned in favor of the appellee for $360.

The appellant moved for a new trial, which being denied, he excepted, and judgment was rendered upon the verdict, but no order was made on the attachment; he appeals to this court, and to reverse the judgment alleges that the

Jeffries v. Loving.

verdict is not supported by the evidence, that the court erred in ruling upon the evidence, the instructions, the motion for a new trial, and in failing to make any order on the attachment.

The appellee is a lawyer and real estate agent residing in Dalton City, Moultrie county, Illinois. The appellant owned a farm of 360 acres near Dalton City upon which he formerly resided but had removed from it to Bartlett, Tennessee. They were well acquainted with each other and in July, 1900, the appellee wrote to the appellant inquiring whether he desired to sell his farm, stating that in case he did, he (appellee) would like to be agent therefor.

The appellant replied by letter that the farm was for sale and that he wanted the appellee to sell it for him; that he (appellant) wanted $85 per acre for the south 120 acres, and $75 per acre for the remainder, out of which he would pay the appellee $1 per acre as commissions for making the sale, or would pay him one-half of what he might get for the farm over above price.

Upon receipt of the letter from the appellant, the appellee listed the farm for sale upon his books at the price and on the terms stated in the letter, notified the various real estate agents in his locality that he had the farm for sale, and posted notices in Dalton City and vicinity to the same effect. A short time thereafter one Grounds stated to the appellee that he would like to buy 80 or 120 acres from the south part of the Jeffries farm at $80 per acre, and the appellee wrote to the appellant for authority to sell Mr. Grounds the part of the farm he wanted at that price. The appellant replied by letter, that the appellee might sell Mr. Grounds 120 acres of the farm at $80 per acre, but that he must take the west eighty and the north forty acres; but Mr. Grounds declined to take the part of the farm designated by Mr. Jeffries in his letter.

In the early part of October, 1900, a son of Mr. Jeffries came to and remained in Dalton City, and one Bradley was keeping an eating house there. During this time, Mr. Kane and his wife, of Ivesdale, Champaign county, Illinois,

being desirous of buying a farm, came to Dalton City to look at one which was for sale near there (not the Jeffries farm) and after looking it over, found it did not suit them. They took dinner that day at Mr. Bradley's house and upon inquiring of him whether there were other farms for sale around there, were told that he knew of none, but suggested that if they would leave their names and address, he would write and inform them in case he should learn of any.

This they did, and in a day or so after they had gone home, Mr. Bradley sought the appellee and informed him that he was of opinion that he knew parties who would buy the Jeffries farm. On the trial Bradley testified that the appellee then told him that if he (Bradley) would sell the farm, he should have commissions, which the appellee, however, denied. At any rate Mr. Bradley wrote a letter to Mr. and Mrs. Kane informing them that he had a farm for sale near Dalton City which he believed would suit them, and requested them to come and see it. At the same time the Kanes received Mr. Bradley's letter, they also received one from Mr. Rogers, a real estate agent of Findley, Illinois, stating that he had a farm for sale near his place and requesting them to come and see it. Findley is between Ivesdale and Dalton City, and the Kanes concluded to go and see both farms. They arrived at Findley first, saw Mr. Rogers, and by him were shown the farm near there about which he had written them. It did not suit them and they so informed Mr. Rogers and told him also that they were going to Dalton City to see a farm near there. Mr. Rogers offered to send them to Dalton City in his carriage and suggested that they go and see the appellee, who had the Jeffries farm for sale, which he thought would suit them. They accepted Mr. Rogers' offer and went in his carriage to the appellee's house. Mr. Rogers sent a note to the appellee along with the driver of the carriage in which he stated that "this will introduce Mr. Mike Kane to you; show him the 360 acres of Jeffries land and give him lowest prices subject to one dollar per acre commissions for myself. I think I can sell him the farm."

After the Kanes arrived at the appellee's house, they were by him shown the Jeffries farm as suggested in the note of Mr. Rogers, which the driver gave him, and the Kanes were so much pleased with the farm that they told the appellee that they would take it in case the price was suitable. The appellee informed them that Mr. Jeffries had listed the farm to him at $85 per acre for the south 120 acres and $75 per acre for the remaining 240 acres; that afterward he had offered to take $80 per acre for a part of it; that he did not know if he would take that for it now, but that he would find out and let them know the lowest price for which Mr. Jeffries would sell; they, agreeing to wait his ascertaining it, went to the house of an acquaintance in Dalton City. The appellee at once wired Mr. Jeffries that he had a customer for his farm and to answer him quick the lowest price he would take. Mr. Jeffries answered by wire, " Twenty-seven thousand five hundred dollars;" upon receipt of which the appellee went to where the Kanes were stopping, found Mrs. Kane but not her husband (he having gone out), and upon showing her the telegram he had received from Mr. Jeffries, she stated that they would take the farm at that price. On his return from seeing Mrs. Kane, the appellee met the son of Mr. Jeffries on the street and he said, "I hear you have purchasers for father's farm;" and the appellee replied, " Yes; I have sold it." In a short time thereafter, Mr. Bradley sought the appellee and inquired if he (Bradley) would be paid commissions in case a sale of the Jeffries farm was made to the Kanes, and upon being informed he would not, Mr. Bradley replied that Mr. Jeffries' son could sell the farm to them and then he (Bradley) would get commissions. The son, with Bradley, then sought Mr. and Mrs. Kane and persuaded them to buy the farm through the son, who would throw $335 off his commissions, so the farm would cost them only $27,155 if he bought through him, instead of $27,500 if he bought through the appellee. The Kanes then agreed to buy through the son, and the appellant, with full knowledge of all the foregoing facts, ratified the sale made by the son

and conveyed the farm to Mr. and Mrs. Kane for $27,165, out of which he paid the son $25 as commissions.

The appellant contends in this court as he did in the Circuit Court, that under the facts in this case, he acted impartially as between his two agents, the appellee and the son, each of whom he had rightfully employed to sell his farm at the same price ($27,500), out of which the agent making the sale should have $360 commissions, leaving the appellant $27,140; that inasmuch as the son sold the land first so that it netted the appellant $27,140, therefore the son and not the appellant earned the commissions.

A complete answer to that contention is that under the undisputed contract of employment between the appellee and the appellant, the latter agreed to pay the former $360 out of the purchase price when the former procured a customer who was able and willing to purchase the latter's farm at $27,500. And that the appellee did procure Mr. and Mrs. Kane, who were able and willing to purchase said farm at said price, and the appellant accepted them as purchasers and actually conveyed the farm to them.

The mere fact that the appellant had also contracted with another agent (his son) to find him a customer for the farm at the same price, and had agreed to pay him the same commissions, and that such other agent induced the appellant to convey the farm to the same customers which the appellee had already procured at a price which netted the appellant the same sum for his farm but which reduced the price to the purchaser and also the commissions to the other agent, did not absolve the appellant from liability to the appellee for the commissions which he had already earned.

We have carefully considered the rulings made by the court on the evidence, of which the appellant complains, and in the view we have taken of this case, find that none of them were improper. The court gave two instructions for the appellee and five for the appellant, and refused a large number which the appellant requested. Those refused nearly all stated mere abstract propositions of law and were,

for that reason alone, properly refused. (Chicago City Ry. Co. v. Anderson, 193 Ill. 9.) The others were properly refused because there being no evidence of any fraudulent conduct on the part of the appellee, there was no evidence to base them upon. The two given for appellee are not complained of.

The omission of the court to make any order on the attachment writ which had been issued in aid of the action and levied upon real estate belonging to the appellant, does not work any prejudice to him, for it is undisputed that he resides outside of the state, and being indebted to the appellee, the latter had the right to have the writ issued in aid of his action, and levied upon any real estate he could find in the jurisdiction of the Circuit Court where this action was brought.

The appellant has not, therefore, been prejudiced by the failure of the court to make any order respecting the attachment. Besides, the record fails to show that either of the parties requested the court to dispose of the attachment, which doubtless was the occasion of none being made.

Finding that the conclusion reached in this case in the Circuit Court is in accordance with the facts and the law applicable thereto, and does justice to the parties, we will affirm the judgment there entered.